ROSARIO BRANCOLEONE, Appellant, *v.* NORTHERN STEVEDORING Co., INC., Respondent.

First Department, December 7, 1928.

*Ralph Stout* of counsel [*James A. Turley*, attorney], for the appellant.

*Theodore H. Lord* of counsel [*William S. O'Connor* with him on the brief; *James B. Henney*, attorney], for the respondent.

McAvoy, J.  The learned trial court dismissed the complaint in this action at the end of the whole case.  The suit was brought for damages for personal injuries, said to be due to defendant's negligence, while plaintiff was working as a stevedore in unloading ties from a steamer.  Plaintiff was employed as a hatch boss and was in charge of a gang at one of the hatches.  He reached the deck of the steamer by means of what is called a gangway ladder. This ladder was part of the permanent equipment of the steamer. It had steps and not rungs.  It was fastened to the platform on a level with the deck with a hinge so it could be raised or lowered alongside the vessel.  The foot of the ladder rested upon the stringpiece of the dock on the day of the injury and it was not tied to the ship.  The foot of the ladder moved up and down on the stringpiece as the vessel would rise and fall with the tide.  It would move in and out to some extent as the vessel moved with the motion of the water.  The vessel was not moored tight against the dock, but might swing a foot or more away.  It was testified, too, that resting the gangway on the stringpiece was not customary nor safe.  The stringpiece was twelve inches high and twenty inches in width.  Alongside the stringpiece was a railroad track, on which empty flat cars were backed down by an engine and placed opposite the hatches of the vessel from which the ties were being taken out.

Plaintiff was injured while on his way down the ladder in the course of his work.  He was coming down backwards, a proper means of descending the ladder, with his hands on the railing on each side of the gangway.  At that moment the engine was backing a train of empty cars down the track.  The ladder had been lowered in the direction from which the cars were coming, and while descending with his back toward the cars, the bottom of the ladder having moved in too close to the track, the train hit the ladder and smashed it, so that plaintiff was swung around against the side of the vessel and was left hanging in the air by his left arm until he fell to the dock.

The plaintiff thereafter made a claim to the State Industrial Commission, which made provisional awards to him at various

times amounting to $607.50. The records of the Commission showed that on March 10, 1920, a previous award was made of $105 for seven weeks' disability at $15 a week. The case was marked continued and no further award was made. The case appears disposed of on June 21, 1920, and that day it was " closed on previous award." Defendant offered in evidence this record from the State Industrial Commission as a final award, claiming that the compensation claimed and the awards thereunder accepted by the plaintiff precluded him from maintaining an action.

The question is whether or not, this being a maritime injury and compensation being shut off by a decision of the Supreme Court on May 17, 1920, under the title of *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149), the cause of action revives because no compensation could thereafter be paid, since the court held that legislation by Congress giving a remedy under Workmen's Compensation Laws for maritime injuries was unconstitutional as devolving maritime jurisdiction on the State Commission when none had existed before.

We think the answer to the question depends in this instance on whether or not there was a final award. If the awards for the injury were complete and a final award made and accepted, the rule would be that there was an accord and satisfaction for the damage, and no further action could survive. However, this record shows that the case was continued in March, 1920, and that the decision preventing further awards was made on May seventeenth of the same year, and that on June 17, 1920, the case was closed on previous award. There had been no final award up to that time, nor was there at that time any final disposition or settlement of the case that could be held to be a final award. At the time of the last award the case was continued. This disposition evidently was a closing out of maritime causes which were pending undetermined before the Industrial Commission at the time the United States Supreme Court decision was handed down. Plaintiff was notified to appear before the Commission on June 17, 1920, and he attempted to show what was told him when he appeared there in response to the notice, but the learned trial court refused to permit evidence of this statement. Under the decision of the United States Supreme Court no final award could have been made on June 17, 1920. All power of the Commission having ceased, all it could do was to close the case and cease acting under the former act of Congress which had been declared void. In the case of *Fitzgerald* v. *Harbor Lighterage Co.* (244 N. Y. 132) the Court of Appeals said that the acceptance of an award, not final, under the Workmen's Compensation Law, was at most an accord, and not a satisfaction,

with the result that a cause of action for damages continued unextinguished, though subject to a set-off to the extent of partial payments. We think that case governs the present instance.

We think the questions of defendant's negligence and plaintiff's contributory negligence and his assumption of the risk involved were jury questions which ought to have been resolved by that body. The place furnished by defendant was unsafe. This is shown by the fact that the ladder which was a necessary part of the equipment for use of employees was so placed that it was struck by flat cars which were being backed down on the railway track upon the dock. This ladder was the only means of access from the vessel to the dock. Plaintiff was obliged to make use of it in the course of his work, and while using it was injured. Such a way to or from the place of work is a part of the work, and it is the master's duty to use reasonable care to see that it is safe. The testimony shows that the foot of the ladder rested upon the stringpiece and was not secured or fastened to the vessel. The bottom of the ladder was bound to move with the flow of the waters, and it not only moved lengthwise towards the stringpiece with the rise and fall of the tides, but it moved sidewise as the vessel moved against the dock. An expert said it was unsafe to rest the foot of such a ladder upon the stringpiece. The lateral movement of the vessel, due to the motion of the water, might cause the gangway (and the hinge holding it at the top) to become bent and thus to project further away from the side of the vessel than intended. The proximity of the track and the overhanging of the cars were signs that defendant should have observed indicating the existence of probable danger to employees using the ladder, which would arise from the unsecured bottom of the ladder moving over far enough to be struck by the cars.

We do not think that the risk was so obvious or so imminent as to cast a duty upon the employee to observe the precise position of the ladder which was furnished for his work.

We think that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.